In re Edna Hall **BAILEY**, Debtor.

**CAPITAL SAVINGS AND LOAN ASSOCIATION, Plaintiff,**

v.

**Edna Hall BAILEY and William C. Parkinson, Jr., Trustee of Edna Hall Bailey, Debtor, Defendants.**

Bankruptcy No. 80–01493.
Adv. Proceeding No. 80–0134.

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

April 9, 1981.

Winfrey T. Wade, Mechanicsville, Va., for plaintiff.

Paul S. Bliley, Jr., Richmond, Va., for defendant/debtor.

William C. Parkinson, Jr., Richmond, Va., trustee/defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing of a Complaint by Capital Savings and Loan Association, Plaintiff herein, requesting the Court to enter an order of abandonment as to the real estate in question pursuant to 11 U.S.C. § 554(b) and further requesting the Court to enter an order granting the Plaintiff relief from the stay imposed by 11 U.S.C. § 362(a) to allow the Plaintiff to foreclose on the subject property. Answers were filed by Edna Hall Bailey and William C. Parkinson, Jr., Trustee, Defendants herein. Upon application by the United States Trustee for an order authorizing the appointment of a trustee in the case, and after a hearing upon notice, this Court entered an order directing the appointment of a trustee. Upon the foregoing, and after a hearing upon notice on Plaintiff's Complaint, the Court renders the following determination.

## STATEMENT OF THE FACTS

The Plaintiff, Capital Savings and Loan Association (Capital) holds a first lien deed of trust dated September 13, 1979, recorded September 14, 1979, Clerk's Office of the Circuit Court of the County of Henrico, Virginia, conveying to it property briefly described as 0.623 acres situated in Henrico County, Virginia at the southeasterly corner of Mechanicsville Turnpike and Hussey Lane, having a frontage of approximately 180 feet on the south line of Mechanicsville Turnpike and a frontage of approximately 149 feet on the east line of Hussey Lane. The note secured by said first deed of trust was in the principal sum of $123,750 with interest at 12% per annum, provided for payment of interest only for the first eight months and further provided for payment of all principal and accrued interest on May 13, 1980. The Debtor gave as additional security, a pledge of a savings account at Capital which was to be used for the payment of the interest accruing on the first day of each month subsequent to the execution of the note and those funds were expended for the payment of interest up to May 1, 1980. The Debtor placed a second lien deed of trust on said property also dated September 13, 1979 and recorded September 14, 1979 in the aforesaid Clerk's Office.

The principal balance, interest and late charges through April 6, 1981 due on the first lien is $137,754.14. The total balance due after adding disbursements by Capital in payment of insurance premiums and to counsel for advertising, foreclosure cost and related expenses amounts to $138,426.94.

The balance due on the second deed of trust including principal and unpaid interest as of April 6, 1981 is $39,168.33. There are also delinquent taxes for the year 1980 amounting to $1,182.26. These total aforesaid indebtednesses amount to $178,777.53. The Debtor is unable to make any payments by way of past due or current interest on the existing first or second deed of trust nor is in any position to amortize the loans in any manner, nor is the Debtor able to give any additional security to affect adequate protection.

Mr. Lewis Buffenstein, a duly qualified real estate appraisal expert, testified that in his opinion the current value of the property is $125,000. Mr. Linwood A. Aaron, also a qualified real estate appraisal expert, testified that in his opinion the property was worth $150,000.

The Debtor testified that she owned the subject property, was the sole stockholder in Properties Unlimited, Incorporated and E. H. Bailey & Son, Incorporated, and in addition, owned other parcels of real estate.

The area of the property in question has not seen a rapid or dramatic growth in real estate values over the last five years. Several shopping centers in the immediate neighborhood have lost major tenants in that period of time. The Debtor offered into evidence an option executed by a prospective purchaser, the terms of which was to pay $1,000 for an option to purchase the property in 90 days with a number of contingencies which, if met, could extend the settlement date several months beyond the option period. This option agreement was dated April 6, 1981. It had not been executed by the Debtor or the Trustee.

## CONCLUSIONS OF LAW

Capital has asked this Court to grant relief to allow it to proceed to foreclosure under its existing first deed of trust on the property. It has argued that under 11 U.S.C. § 362(d)(1) that it is entitled to a termination of the stay for cause including the lack of adequate protection of an interest in property. It has also contended that it is entitled to relief under the stay pursuant to 11 U.S.C. § 362(d)(2) in that the Debtor does not have any equity in the property and such property is not necessary to an effective reorganization.

Conversely, the Debtor and the Trustee argue that Capital has adequate protection due to the equity cushion in the property, and secondly, that the Debtor has equity in the property and it is necessary to an effective reorganization.

In ascertaining the value of the property, this Court believes that the property would sell at a price somewhere between $125,000 and $150,000. The Court gives little credence to the option which is in the amount of $175,000. It would not be sufficient to pay the admitted liens on the property. It is purely an option which could delay for a period of three to nine months any payment to Capital who has received no payment since May of 1980. Interest on the first and second mortgage loans is accruing at the rate of at least 12% per annum. In three months the Debtor will have incurred at least $4,800 in interest accruals and stands only to receive $1,000 for execution of the option agreement.

Giving the Debtor the best case and ascertaining the value of the property from the Debtor's witness to be $150,000, the difference between the balance due on Capital's obligation and the Debtor's valuation is $12,000. From that amount there would have to be deducted delinquent taxes of $1,182 and a probable real estate commission of an amount varying between 6% and 10%. This Court does not believe an equity cushion exists to protect the first mortgage lender from any loss it is currently sustaining with respect to the property. The mortgage lender, through its vice president, testified that on commercial development that they limit their investment to 75% of the fair market value. At best, given the highest appraised value of the property, and the current first deed of trust indebtedness and delinquent taxes which are superior in priority to the first deed of trust, Capital would have an equity cushion of approximately 7.5%. This would not take into account any real estate commission that

might be earned. If a real estate commission of 10% were to be paid, Capital would be without any cushion. See *In re Rogers Development Corp. and Beaverdam Farms, Inc.*, 2 B.R. 679, 1 C.B.C.2d 499 (Bkrtcy., E.D.Va.1980).

The property has been on the market since the date the Debtor acquired it in 1979. The Court can give little credence to a last moment option which requires only a $1,000 deposit in order to tie this property up for several months and which has innumerable escape clauses for the prospective purchaser.

Having found that the Plaintiff is entitled to relief due to a lack of adequate protection of its interest in property, the Court need not make any findings that the Debtor has no equity in the property or that it is necessary to an effective reorganization, however, the Debtor has yet proposed no plan and the evidence presented here is not such that this Court could readily find a need for this property in an effective reorganization. It has been the Debtor's intention from the inception of the acquisition of this property to sell it. It is the Debtor's burden pursuant to 11 U.S.C. § 362(g) to show the need of this property for an effective reorganization and that burden has not been effectively borne by the evidence before the Court.

For the foregoing reasons, the automatic stay of § 362(a) is TERMINATED with respect to the Debtor and to the Trustee duly appointed herein in order to allow Capital to commence and conclude a foreclosure under its duly recorded deed of trust subject to the condition that the proceeds, if any, from the sale of this property at foreclosure after the satisfaction of all existing liens and encumbrances are to be remitted to the Trustee.

An appropriate order will issue.